**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY, *et al.*,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION 11-0609-WS-B** |
| **SOUTHERN SURETY ASSOCIATES, INC.,** | ) ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on plaintiffs' Motion for Default Judgment (doc. 12). The Motion is ripe for disposition.

**I.      Background.**

On October 26, 2011, plaintiffs, Hartford Casualty Insurance Company and Hartford Fire Insurance Company (collectively, "Hartford"), commenced this straightforward breach of contract action by filing their Complaint (doc. 1) against defendant, Southern Surety Associates, Inc. ("Southern Surety") in this District Court.[1]

The Complaint alleges that, in March 2005, Southern Surety entered into a written Agency Agreement (the "Agreement") with Hartford to solicit, quote, and bind insurance for bond business.  By the terms of that Agreement (a copy of which is appended to and incorporated in the Complaint), Southern Surety was authorized to collect and receive certain premiums for so-called "agency-billed business," and to hold such premiums as Hartford's fiduciary.  (Doc. 1, Exh. A, § 2.1.)  The Agreement specified that Hartford would compensate Southern Surety for its agency services by paying commissions at rates published in

---

[1]      Federal subject-matter jurisdiction was properly predicated on 28 U.S.C. § 1332, inasmuch as well-pleaded allegations of the Complaint establish that there is complete diversity of citizenship between both Hartford entities and Southern Surety, and that the amount in controversy substantially exceeds the $75,000 jurisdictional threshold.

accompanying schedules.  (*Id.,* § 5.1.)  With respect to agency-billed business, Southern Surety was authorized to "retain out of premiums … the commissions due and payable to [it] on such business."  (*Id.*, § 6.1(b). )  According to the Agreement, Southern Surety was obligated to provide monthly accounting to Hartford of all premiums on agency-billed business, with any balances being paid to Hartford within 45 days after the end of the month.  (*Id.*, § 6.1(d), (e) & Declarations.)  The Agreement authorized Hartford to impose a late fee of up to 1% per month for unpaid premiums.  (*Id.*, § 6.1(f).)

The well-pleaded allegations of the Complaint reflect the following: (i) Southern Surety sold certain bonds (the "Bonds") as agency-billed business under the Agreement; (ii) the net premium payments for those Bonds were due and owing to Hartford; and (iii) Southern Surety did not remit payment to Hartford.  (Doc. 1, ¶ 11.)  The Complaint further alleges that Hartford demanded payment of the past due balances via letter dated April 9, 2010, but that Southern Surety failed and refused to make any payments or to pay in full the outstanding balance owed. (*Id.*, ¶¶ 12-15.)[2]

On the strength of these factual allegations, Hartford asserted a single state-law cause of action against Southern Surety for breach of contract, on the theory that Southern Surety owed Hartford more than $187,000 in outstanding premiums in connection with the Agreement, such that Southern Surety was in breach of the Agreement.  (Doc. 1, ¶¶ 17-19.)  In the *ad damnum* clause of the Complaint, Hartford demanded the full outstanding premium balance, as well as "pre and post judgment interest, penalties, attorneys' fees, costs of this action and such other relief deemed just and proper."  (*Id.* at 5.)

The court file reflects that process was served on Southern Surety's registered agent via certified mail on November 1, 2011.  (*See* doc. 8.)  When defendant failed to appear or defend within the time provided by the Federal Rules of Civil Procedure, plaintiffs applied to the Clerk of Court for entry of default.  (*See* doc. 9.)  On March 16, 2012, a Clerk's Entry of Default (doc. 10) was entered against Southern Surety pursuant to Rule 55(a), Fed.R.Civ.P., for failure to

---

[2]     Correspondence appended to the Complaint suggests that Southern Surety's stated reasons for not paying the premiums owed to Hartford were financial difficulties borne of an unfavorable economic climate.  (Doc. 1, Exh. D.)  Southern Surety offered to make installment payments on the amounts owed, but then failed to follow through.

appear or otherwise defend.  Hartford now seeks entry of default judgment against Southern Surety, and has submitted additional exhibits to document its claimed damages.[3]

## II.    Analysis.

### A.    Entry of Default Judgment is Appropriate.

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor."  *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment.").  Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure."  *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for seven months after being served (despite knowledge of ongoing default proceedings against it), entry of default judgment is appropriate.  Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend."  Rule 55(a), Fed.R.Civ.P.  In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process.[4]  In short, "[w]hile modern courts do not favor default judgments, they

---

[3]     The Certificates of Service appended to both the Application for Entry of Default (doc. 9) and the Motion for Default Judgment (doc. 12) confirm that Hartford mailed copies of same to Southern Surety's registered agent in Gulf Shores, Alabama, contemporaneously with their filing.  As such, Southern Surety has received ample notice of these default proceedings, but has elected to remain silent and not to defend its interests in this case.  Accordingly, the Court concludes that no further notice or invitation to Southern Surety is warranted prior to entry of default judgment.

[4]     *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default (Continued)

are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted).  That is precisely what Southern Surety has done here.  Despite being served with process back in November, defendant has declined to appear or defend, and has effectively prevented this litigation from leaving the starting blocks.

The law is clear, however, that Southern Surety's failure to appear and the Clerk's Entry of Default do not automatically entitle Hartford to a default judgment in the requested (or any) amount.  A default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief").  Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint and is satisfied that it sets forth a viable cause of action against Southern Surety under applicable law.  Specifically, Count One alleges that Southern Surety entered into the Agreement with Hartford; that the Agreement required Southern Surety to collect certain premium payments on agency-billed business and remit such premiums to Hartford in a timely manner; that Southern Surety failed to make such payments to Hartford; and that even after a formal demand letter from Hartford, Southern Surety has failed to make any payments to reduce the outstanding balance.  These and

---

judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

other factual allegations set forth in the Complaint are more than sufficient to state a cognizable cause of action for breach of contract.  Because the well-pleaded factual allegations in the Complaint are deemed admitted by virtue of Southern Surety's default, and because they state a claim for breach of contract, the Court finds that Southern Surety is liable to Hartford for breach of the Agency Agreement.

Simply put, entry of default judgment against Southern Surety is appropriate pursuant to Rule 55, given its failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which Southern Surety has now admitted) to establish its liability to Hartford on the breach of contract theory set forth in the Complaint.

### B.      Plaintiffs' Damages.

#### 1.      Applicable Legal Standard.

Notwithstanding the propriety of default judgment against Southern Surety, it remains incumbent on Hartford to prove damages.  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks.").  Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters."  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or

-5-

speculative").[5]  "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from."  *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).

The Motion for Default Judgment reflects that plaintiff is pursuing three categories of damages.  In particular, Hartford requests an award of $187,854.77 for unpaid premiums due and owing under the Agreement, as well $5,527.30 in attorney's fees and $350.20 in costs and expenses, for a total amount of $193,732.27.  The Court will examine the recoverability of each of these types of damages, and the sufficiency of plaintiff's proof, in turn.

### 2.    *Damages for Outstanding Premiums.*

The principal type of damages sought by Hartford consists of the net premiums owed under the Agreement.  To prove these damages, Hartford relies on the Affidavit of Susan Davis, its Front Line Billing Manager.  (*See* doc. 12, Exh. C.)  The Davis Affidavit breaks down on a bond-by-bond basis the premiums Southern Surety owes under the Agreement, to-wit: (i)

---

[5]    In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default.  *Anheuser Busch*, 317 F.3d at 1266.  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages.  *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation.").  In this case, Hartford has not requested a hearing, but has instead submitted affidavits and exhibits in support of the requested damages amount.  Under these circumstances, the damages determination will stand or fall on this written evidentiary submission, without the necessity of a formal hearing.

$6,192.90 for the insured Shepherd & Sons Electrical Plumbing (bond # 21 BCS FC0138); (ii) $1,435.00 for the insured RLB Contracting Inc. (bond # 21 BCS FC0139); (iii) $59,287.90 for the insured T.W. Laquay Dredging Inc. (bond # 21 BCS FC0140); (iv) $51,999.88 for the insured Hinton Construction Company Inc. (bond # 21 BCS FC0141); (v) $63,896.21 for the insured RLB Contracting Inc. (bond # 21 BCS FC0142); and (vi) other outstanding premiums on other bonds (as enumerated in the exhibit to the Davis Affidavit and as determined via final audits) in the net amount of $5,042.88.[6]  The sum of these amounts is $187,854.77, the precise figure sought by Hartford for unpaid premiums under the Agreement.

After careful review of plaintiffs' evidentiary submission, the Court finds that Hartford has properly shown that it is entitled to unpaid bond premiums under the Agreement in the amount of **$187,854.77**, which will be included in the default judgment award.

### 3.    *Attorney's Fees.*

Hartford also seeks an award of attorney's fees.  The threshold problem with that request is that neither the Complaint nor the Motion for Default Judgment identifies any legal basis for such a fee award in this case.  "The principle that each party should bear its own attorneys' fees, the American Rule, has become firmly entrenched and consistently adhered to in American federal legal practice."  *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 840 (11th Cir. 2010) (footnotes omitted); *see also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967) ("The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."); *Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) ("under the 'American Rule' parties in litigation are expected to bear their own attorney's fees and costs"); *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) ("Generally, in federal litigation, … a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties.").[7]

---

[6]      Each of these figures represents the net premium amount owed to Hartford, <u>after</u> subtracting out (i) commissions that Southern Surety was entitled to retain under the terms of the Agreement and (ii) any partial payments that Southern Surety may have made.

[7]      The Agreement contains a choice-of-law provision reflecting that it is governed by the laws of the State of Connecticut.  (Doc. 1, Exh. A, § 15.12.)  However, Connecticut hews to this same common-law rule.  *See, e.g., Commissioner of Environmental Protection v. Mellon*, (Continued)

For a garden-variety breach of contract claim such as Hartford's, there is no statute authorizing an award of attorney's fees.  Moreover, Hartford has cited no fee-shifting provision in the Agreement, and the undersigned's review of same has revealed none.  Simply put, plaintiffs have identified no clause in the Agency Agreement that would require defendant to pay Hartford's attorney's fees incurred in enforcing its right to payment under the Agreement.  Accordingly, no attorney's fees will be awarded as part of the default judgment in this case.

          **4.**     **Costs.**

Finally, plaintiffs claim costs in the amount of $350.20.  Pursuant to Rule 54(d), Fed.R.Civ.P., the general rule is that costs "should be allowed to the prevailing party."  *Id.* Statutory authorization is a necessary condition for the shifting of costs.  *See West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 86, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *see also U.S. Equal Employment Opportunity Commission v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000) ("a court may only tax costs as authorized by statute").  "[A]bsent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in 28 U.S.C. § 1920" in awarding costs to a prevailing party.  *Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001).

Here, plaintiffs seek recovery of costs incurred for filing fees and photocopies.  Both are permissibly taxed as costs under applicable law.  *See* 28 U.S.C. § 1920(1) ("A judge or clerk … may tax as costs … [f]ees of the clerk and marshal"); 28 U.S.C. § 1920(4) ("Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.").  Because the amounts claimed are reasonable and properly taxed as costs under Rule 54(d), the default judgment will include the full requested amount of **$350.20** in taxable costs.

---

945 A.2d 464, 470 (Conn. 2008) ("[t]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception") (citation omitted); *Cedar Mountain, LLC v. D and M Screw Machine Products, LLC*, --- A.3d ----, 2012 WL 1499917, *11 (Conn.App. May 8, 2012) (observing general rule of law that attorney's fees are not recoverable by successful party, and recognizing exception where "a specific contractual term may provide for the recovery of attorney's fees and costs") (citation omitted).

**III.     Conclusion.**

For all of the foregoing reasons, plaintiffs' Motion for Default Judgment (doc. 12) is **granted in part**, and **denied in part**.  Default judgment will be entered in favor of plaintiffs and against defendant in the total amount of **$188,204.97** (which includes $187,854.77 in unpaid premiums and $350.20 in taxable costs).

Because this Order and the accompanying Default Judgment resolve all issues against all parties herein, the Clerk's Office is **directed** to close this file for administrative and statistical purposes.

DONE and ORDERED this 8th day of June, 2012.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE